FILED
2006 Jul-07  AM 07:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **FELECIA T. RUCKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2:04-CV-985-VEH** |
| | ) | |
| **MIKE HALE, as Sheriff** | ) | |
| **of Jefferson County, Alabama,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>OPINION</u>

This Court has before it the August 29, 2005, motion of Defendant Mike Hale, Sheriff of Jefferson County, Alabama (hereinafter "Defendant") for summary judgment as to Plaintiff Felicia Rucker's (hereinafter "Plaintiff") race discrimination claim (doc. 29). For the reasons set forth below, the Defendant's motion for summary judgment is due to be **GRANTED** as to Plaintiff's racial employment discrimination claim based on disparate treatment in job transfers under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended by the Civil Rights Act of 1991.

### I. Procedural History

This is a civil action, filed originally by Plaintiffs Anthony Pippens, Byron K. Deramus, Wilbert Miller, Jr., James E. Perry, Felicia T. Rucker, and Curtis Williams, against the Defendants, the Jefferson County Sheriff's Department and

Mike Hale in his individual and official capacities as the Sheriff of Jefferson County. The initial Complaint in this case was filed on December 19, 2003, and given case number CV-03-BE-3352-S. (doc. 2).   On May 13, 2004, Judge Lynwood Smith severed the action into six individual cases.[1]  The present action is brought by Plaintiff Felicia Rucker.

The Amended Complaint, filed on February 25, 2004, adds as Defendants the Jefferson County Commission and Jefferson County, Alabama. (doc. 4).  The Amended Complaint also alleges three Counts against the Defendants for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Count I); violation of 42 U.S.C. §§ 1981 and 1981(a) through section 1983 (Count II); violation of the Plaintiff's rights to equal protection (Count III); and violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983 for retaliation in violation of Plaintiff's First Amendment right to political association (Count IV).[2] (doc. 4).

---

[1]      The actions of Plaintiffs Pippens, Miller, and Williams are the subject of separate pending summary judgment motions before this Court.  The actions of Plaintiffs Deramus and Perry were dismissed with prejudice by Judge Blackburn on August 2, 2005, and October 24, 2005, respectively.

[2]      This Court granted Plaintiff's motion to dismiss all claims against Defendant Mike Hale in his individual capacity. (doc. 23).  In a memorandum opinion published on October 28, 2004, (doc. 24), this Court dismissed with prejudice (1) all claims against Jefferson County; (2) all claims against the Jefferson County Commission; and (3) Plaintiff's claims against Defendant Hale in his official capacity for violations of 42 U.S.C. § 1981 and § 1981(a) through 42 U.S.C. § 1983 (Count II).  In the Defendant's motion to dismiss, Defendant Hale refers to the constitutional claims under the First and Fourteenth Amendments as being enforced and brought through § 1983. (Def.'s Mot. to Dismiss 4, FN 2).  Section 1983 is not itself a source of substantive rights, rather it provides a method for vindicating federal rights elsewhere conferred. *Baker v. McCollan*, 443 U.S. 137, 144, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).  The Court entered an order on October 27, 2004 granting the Defendant's motion to dismiss all of Plaintiff's claims sounding in § 1981 and § 1983 against Sheriff Hale in his official capacity.

On August 29, 2005, Defendant filed a motion for summary judgment with this Court asserting: (1) since Plaintiff has not alleged direct evidence showing that Sheriff Hale discriminated against her, Plaintiff must prove her case through circumstantial evidence, using the familiar burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) (Def's Mot. for Sum. Judg. 10).  Under this framework, Plaintiff must establish the following four prongs of the prima facie case: (1) she was a member of a protected class; (2) she was subjected to an adverse employment action; (3) similarly situated individuals outside of the protected class were treated more favorably; and (4) she was qualified for the job.[3] (Def. mot. for sum. judg. 10).

---

(doc. 25).  Therefore, the Plaintiff's First and Fourteenth Amendment claims were dismissed with prejudice and are not claims in the present action.

This Court denied Defendant's motion to dismiss as to Plaintiff's Title VII action against Defendant Hale in his official capacity.  Therefore, Plaintiff's Title VII claim is the only claim that is the subject of this present action.

[3]    This Court originally denied the Defendant's motion for summary judgment on October 12, 2005. (doc. 34).  The Defendant filed a motion to reinstate the Defendant's motion for summary judgment on February 6, 2006. (doc. 35).  This Court granted the Defendant's motion to reinstate the Defendant's summary judgment motion on February 6, 2006. (doc. 36)

The Defendant submitted evidence[4] in support of his motion for summary

judgment and filed a supporting brief on August 29, 2005.[5]

## II. Standard of Review

### A. Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party

moving for summary judgment "always bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of [the

evidence] which it believes demonstrate the absence of a genuine issue of material

fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet

---

[4]     Set-Up Personnel Action Form dated 2/19/90; two (2) Change Personnel Action Forms dated 9/22/99 and 11/11/99; Vacancy Notices dated 4/05/03, 4/14/04, 6/03/04, 8/13/04, and 10/21/04; Letters from Plaintiff requesting consideration for the vacant positions posted, dated 5/01/03, 4/14/04, 8/18/04, 10/27/04 and 11/14/04; Letter from Captain Willie Hill, announcing that the 4/14/04 vacancy posting has been awarded to Shane Bates; Plaintiff's EEOC Discrimination Charge Form; Letter of Interest for the 4/05/04 position by Deputy Timothy Edgil, dated 4/14/04; Administrative Personnel Order announcing that the 4/05/04 posting has been awarded to Timothy Edgil; Letters from Sergeants Jaeger, Mitchell, and Lampman, who applied for the Sergeant position in the Birmingham Patrol Division; Jefferson County Personnel Board Certificate of Individuals, including Plaintiff, that are eligible for a promotion to Sergeant; Personnel Order dated 6/25/04 announcing that the 6/03/04 position was awarded to Sergeant Van Lampman; Change Personnel Action Form announcing Plaintiff's pay increase and promotion to Sergeant, dated 07/01/04; Administrative Personnel Order announcing that the 8/13/04 posted position was awarded to Sergeant David Thompson, dated 9/02/04; Interview Ranking Letter indicating that Sergeants Lyle and Graben were the two highest-rated interviewees who were chosen for the Sergeant positions in the Birmingham Criminal Division; Plaintiff's Deposition, with exhibits; and the Affidavit of Mike Lindon.

[5]     Defendant's motion for summary judgment was not opposed by Plaintiff.

this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once a moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 234 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

## B. Unopposed Motion for Summary Judgment

The nonmovant has not opposed the motion for summary judgment in the instant action. However, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed, but, rather, must

consider the merits of the motion." *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir.2004), citing *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11 th Cir. 1988) (per curiam).  See also *Hibernia Nat'l Bank   v. Administration Central Sociedad Antonima*, 776 F.3d 1277, 1279 (5th Cir. 1985) ("a motion for summary judgment cannot be granted simply because there is no opposition...."), citing *John v. La. (Bd. of Trustees for State Colleges & Universities),* 757 F.2d 698, 709 (5th Cir.1985).  "[T]he district court's order granting summary judgment must 'indicate that the merits of the motion were addressed.'" *One Piece of Real Property*, 363 F.3d at 1102, quoting *Dunlap*, 858 F.2d at 632.

While this court is not required to examine every item of evidence before it when considering a motion for summary judgment, it must make certain that the motion is "supported by evidentiary materials." *One Piece of Real Property*, 363 F.3d at 1101.  At the least, this court must consider all the evidence submitted by the movant in support of its motion. *Id*., citing *Jeroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989) (per curiam) ("...the district court must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact").

The movant must demonstrate an absence of a genuine issue of material fact; if the movant fails to meet this burden, this court may deny the motion, without

regard to whether the nonmovant has filed a response. *Hibernia Nat'l Bank*, 776 F.3d at 1279, citing *John*, 757 F.2d at 708.

However, if the nonmovant has not supplied the court with a response to any issue of fact, this court may receive the movant's factual account as "a prima facie showing of its entitlement to judgment." *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5t h Cir. 1988), citing *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. V. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### III. Relevant Facts

Under Sheriff Mike Hale's Administration, Rucker was transferred from Evening Patrol (Oak Grove) to the Bessemer Vice and Narcotics Unit, resulting in a 5% increase in compensation from $16.27 to $17.07 per hour. (Ex. 2, Change Personnel Action Form Dated 9/22/99).

On November 5, 1999, the Alabama Supreme Court rendered a verdict declaring Jim Woodward the Sheriff of Jefferson County, Alabama. *See Eubanks v. Hale*, 752 So. 2d. 1113, 1163 (Ala. 1999).

On November 6, 1999, under Sheriff Woodward's administration, Rucker was removed from the Vice and Narcotics Unit and returned to the Bessemer

Enforcement Unit, resulting in a five percent (5%) decrease in compensation per hour. (Ex. 2, Change Personnel Action Form dated 9/22/99).

Rucker formally requested consideration for a Youth Aid Investigator position with the Jefferson County Sheriff's Office, Bessemer Criminal Division. (Ex. 4, Vacancy Notice dated 4/14/03; Ex. 5, Letter from Rucker dated 5/01/03). However, this position was later awarded to Shane Bates. (Ex. 6, Letter from Captain Willie Hill). Defendant asserts that "too much time and training had been devoted to the three School Resource Officers, including Plaintiff, to remove them from their specialized assignments." (Ex. 6, letter from Captain Willie Hill). On June 17, 2003, Rucker filed a race and sex discrimination charge with the EEOC. (Ex. 7, EEOC Charge Form).

On April 14, 2004, Rucker requested consideration for a Homeland Security position posted on April 5, 2004. (Ex. 8, Vacancy Notice dated 4/5/04; Ex. 9, Letter from Rucker, dated 4/14/04). This position was awarded instead to Sergeant Timothy Edgil, who had been employed with the Jefferson County Sheriff's Office since 1986 as a radio dispatcher and had worked as a Deputy Sheriff since 1997. Both Edgil and Plaintiff met the minimum requirements in order to be considered for the position.[6]

---

[6]     In order to be considered for this position, the applicant must hold the status of a Deputy Sheriff and have had at least one year patrol experience with the Jefferson County Sheriff's Office. (Def.'s Mot. for Sum. Judg. 13).

On June 3, 2004, a vacancy for a Sergeant position in the Birmingham Patrol Division was posted and expired on June 18, 2004, for which only three officers applied.[7] (Ex. 12, Vacancy Notice dated 6/03/04; Ex. 13, Letters from Applicants). Plaintiff satisfied the scoring requirement of the promotion test and did receive a promotion to the rank of Sergeant effective as of June 30, 2004.  Plaintiff also received an increase in compensation from $20.57 to $21.60 per hour. (Ex. 16, Change Personnel Action Form dated 7/01/04).

Plaintiff requested to be considered for three (3) different positions from August, 2004 to October 2004 and was denied for all three (3) positions. (Ex. 18, Letter from Rucker dated 8/18/04; Ex. 19, Administrative Personnel dated 9/02/04; Ex. 21, letter from Rucker dated 10/27/04; Ex. 22, Interview Ranking Letter).  The August 13, 2004 posted position was awarded to Sergeant David Thompson, and the two (2) Detective positions in the Criminal Division were awarded to Sergeants Glen Lyle and Charles Graben. (Ex. 19, Administrative Personnel dated 9/02/04; Ex. 22, Interview Ranking Letter).

On November 14, 2004, Plaintiff requested consideration for any present and/or future vacancies in the Patrol Division, even though, at that time, there were no vacancies for a patrol position available. (Ex. 23, Letter from Rucker dated 11/14/04; Ex. 14, Personnel Order Dated 6/24/04).

---

[7]     Sergeants Charles Jaeger, Bonita Mitchell, and Martin Van Lampman applied for the Birmingham Patrol Division opening posted on June 3, 2004.

## IV. Applicable Substantive Law and Analysis

Title VII provides that "[i]t shall be unlawful employment practice for an employer... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." *42 U.S.C. § 2000e-2(a)(1)*. Further, the statute makes it an unlawful employment practice for an employer... to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because off such individual's race...." 42 U.S.C. § 2000e-2(a)(2).

### A.   <u>Sovereign Immunity In Relation to Plaintiff's Claims for Monetary Relief</u>

The Plaintiff requests that Court issue an Order compelling the "defendant to make the Plaintiff[] whole by awarding [him] the position[] [he] would have occupied in the absence of race discrimination, back pay (plus interest), punitive damages, compensatory damages, nominal damages, liquidated damages, declaratory relief, injunctive relief, and benefits" (Pl.'s Prayer for Relief ¶ 3). The Eleventh Amendment of the United States Constitution states that: "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of

another state, or by citizens or subject of any foreign state. *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1524 (11th Cir. 1990).

The Supreme Court has held that an unconsenting state is immune from lawsuits brought in federal court by the state's own citizens. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).   This Eleventh Amendment protection is further expanded because lawsuits against state officials in their official capacity are suits against the state when "the state is the real, substantial party in interest."[8] *Pennhurst State School Hospital v Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (quoting *Ford Motor Co. V. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed 389 (1945)).

A lawsuit filed against an Alabama sheriff is essentially a suit against the state.  Further, Article I, § 14 of the Alabama Constitution of 1901 states: "the state of Alabama shall never be made a defendant in any court of law or equity." *Parker v. Amerson*, 519 So. 2d 422, 443 (citing *Montiel v. Holcombe*, 119 So. 245 (Ala. 1940)).   In Alabama, the office of Sheriff is a state constitutional office, vested with the immunities of a state official as an agent or "arm of the state." *McMillian v. Monroe County*, 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d1 (1997)*; see also Alabama Code* § 36-22-3.

---

[8]     The state is held to be the real party in interest due to the fact that the state would have to pay any award of damages. *Carr v. City of Florence* 916 F.2d at 1524.

There are three exceptions to Eleventh Amendment immunity. The Eleventh Amendment bars suits for monetary damages against a state by citizens of that state, unless (1) the state waives its Eleventh Amendment immunity or (2) Congress abrogates said immunity. *Adams v. Franklin*, 111 F.Supp.2d at 1262 (Citing *Carr v. City of Florence*, 916 F.2d at 1524). There is a third exception to Eleventh Amendment immunity, which allows suit to be brought against a state or state agent for injunctive relief provided that the state or agent violated the Plaintiff's constitutional rights in some way by performing an official duty or action. *Pennhurst*, 465 U.S. at 102, 104 S.Ct. at 909 (discussing *Ex Parte Young*[9], 209 U.S. 123, 28 S.Ct. 441, 53 L.Ed. 714 (1985)). In *Ex Parte Young,* the Supreme Court held that the Eleventh Amendment did not prohibit issuance of an injunction against the Attorney General of Minnesota because an unconstitutional enactment was to be viewed as "void" and therefore does not "impart to [the officer] immunity from accountability to United States supreme authority." *Ex Parte Young*, 209 U.S. at 160, 28 S.Ct., at 454.

When applied to the case at bar, two of these exceptions can be immediately dismissed without further evaluation. There is neither any evidence in the present action nor any jurisprudence that demonstrates that the State of Alabama has waived its Eleventh Amendment immunity. Also, the third exception, which only

---

[9]     In *Young*, a federal court enjoined the Attorney General of the State of Minnesota from bringing suit to enforce a state statute that allegedly violated the Fourteenth Amendment.

grants injunctive relief, does not apply to the case at bar due to the fact that Defendant is invoking immunity only in relation to Plaintiff's monetary claims under Title VII as well as 42 U.S.C. § 1981 through § 1981(a) and 42 U.S.C. § 1983.

The second exception applies in this case because the Eleventh Amendment does not bar Title VII actions against state officials.  There is Eleventh Circuit case law that establishes that Congress has abrogated Eleventh Amendment immunity in such cases.  Specifically, the Eleventh Circuit has held that Eleventh Amendment immunity does not apply in civil actions invoking Title VII because Congress has clearly expressed its intention that state governments be subject to suit under Title VII.  *Allen v. Alabama State Board of Education*, 816 F.2d 575 (11th Cir. 1987); *see also Cross v. State of Alabama*, 49 F.3d 1490, 1502 (11th Cir. 1995).  Congress can abrogate a state's sovereign immunity only if: (a) Congress "unequivocally expressed its intent to abrogate the immunity," through "a clear legislative statement," and (b) Congress has acted "pursuant to a valid exercise of power."  *In Re: Employment Discrimination Litigation Against the State of Alabama, et al., v. State of Alabama*, 198 F.3d 1305, 1317 (11th Cir. 1999)(quoting *Seminole Tribe v. Florida*, 517 U.S. 44, 55, 116 S.Ct. 1114, 1123, 134 L.Ed.2d 252 (1996).  When Title VII was first enacted in 1964, its coverage was not extended to state and local

governments.   In 1972, the statute was amended to include "governments, governmental agencies, [and] political subdivisions."[10]  42 U.S.C. § 2000e(a).

In *Fitzpatrick v. Bitzer*, 427 U.S. 445, 447-48, 96 S.Ct. 2666, 2667, 49 L.Ed.2d 614 (1976), the Supreme Court concluded that, [i]n the 1972 Amendments to Title VII of the Civil Rights Act of 1964, Congress, acting under § 5 of the Fourteenth Amendment, authorized federal courts to award money damages in favor of a private individual against a state government found to have subjected that person to employment discrimination on the basis of "race, color, religion, sex, or national origin."   The Court also stated that "[t]here is no dispute that in enacting the 1972 Amendments to Title VII to extend coverage to the States as employers, Congress exercised its power under § 5 of the Fourteenth Amendment." Id. at 453 n.9, 96 S.Ct. at 2670 n.9.   Therefore, Congress abrogated the state's sovereign immunity as it relates to Title VII actions.   Accordingly, the Eleventh Amendment does not bar Plaintiff from receiving monetary damages on her Title VII race discrimination claims should she prevail.

### B.   Plainitff's Claims of Disparate Treatment due to Race under Title VII

---

[10]      The 1972 Amendments retained the right of an individual aggrieved by an employer's unlawful employment practice to sue on his or her own behalf, upon satisfaction of the statutory procedural prerequisites, and made clear that right was being extended to persons aggrieved by public employers. *See* 1972 Amendments, § 4(a), 86 Stat. 104, 42 U.S.C. §§2000e-5(a)-(g) (1970 ed., Supp. IV).

"Whether an employer intentionally discriminated against an employee... is a question of fact, which may be proved either through direct or circumstantial evidence." *EEOC v. Joe's Stone Crab*, 296, F.3d 1265, 1272 (11th Cir. 2002). Defendant asserts that because Plaintiff cannot present direct evidence to establish a prima facie case in order to show that the complained of unlawful employment practices have taken place, Plaintiff must prove her case "through circumstantial evidence, using the familiar burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973)." *Id.*

In order for the Plaintiff to create a rebuttable presumption of discrimination by proving a prima facie case of discrimination, she must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) similarly situated individuals outside the protected class were treated more favorably; and (4) she was qualified for the job. *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997).

Once the plaintiff establishes a prima facie case, the burden effectively shifts to the Defendant, who must articulate a legitimate, non-discriminatory reason for the challenged employment action. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S 113, 142 (2000).  Once the presumption is rebutted, the employer is entitled to summary judgment unless the plaintiff proffers evidence from which a reasonable fact-finder could conclude that the reason articulated by the defendant

was mere pretext for discrimination. *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002).

**Disparate Treatment in Employment Placement**

Plaintiff's disparate treatment claims are based on six (6) separate alleged adverse employment decisions: (i) the transfer from the Vice and Narcotics Unit to the Bessemer Enforcement Unit; (ii) Plaintiff's non-selection for the position of Youth Aid Investigator; (iii) Plaintiff's non-selection for the Deputy position in the Department of Homeland Security; (iv)Plaintiff's non-selection for the Sergeant position in the School Resource Division; (v) Plaintiff's non-selection for the Detective position in the Birmingham Criminal Division; and (vi) Plaintiff's non-selection for the Patrol position in the Centerpoint Area.

**i. The transfer from the Vice and Narcotics Unit to the Bessemer Enforcement Unit**

Defendant asserts that Plaintiff is unable to establish a prima facie case for discrimination based on race. The Defendant also asserts that Plaintiff's claims are improper because the alleged adverse employment action occurred under a different administration (a Sheriff other than Defendant) and that Plaintiff's claims as to this issue are time barred.

Plaintiff satisfies the first prong of the *McDonnell Douglas* test; she is an African American citizen of the United States.[11] (Amend. Compl. ¶ 12).  Plaintiff was impacted by an adverse employment action because this transfer resulted in Plaintiff's compensation decreasing from $17.58 hr. to $16.76 per hour. (Ex. 3, Change Personnel Action Form dated 11/11/99).  Plaintiff does not put forth, nor does the Defendant stipulate to the presence of any evidence that this transfer allowed a member of a non-protected class to be favorably impacted.  This lack of evidence represents Plaintiff's inability to establish a prima facie case due to a failure to establish the third prong of the test.

Plaintiff previously held this position, thereby proving her qualification for the position and satisfying the fourth prong of the *McDonnel Douglas* test.  Assuming that the third prong of the *McDonnell Douglas* test was in fact satisfied and that Plaintiff establishes a prima facie case, the Defendant argues that Plaintiff's claims are improper because the alleged adverse employment action at issue did not occur under the administration of the Defendant.

"When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action

---

[11]    For the purposes of evaluating Plaintiff's claims as to the *McDonnell Douglas* prima facie case test, it should be noted that Defendant Hale stipulated that Plaintiff is an African American, thereby satisfying the first requirement of belonging to a protected class. (Ans. of Def. to Amend. Compl. ¶ 12).  Accordingly, the first prong of this test will be assumed as accepted throughout this opinion.

does not abate and the officer's successor is automatically substituted as a party."

Fed.R.Civ.P. 25(d)(1).

Plaintiff was transferred from an Evening Patrol position in Oak Grove to the Bessemer Vice and Narcotics Unit, resulting in a five percent (5%) increase in compensation from $16.27 hr. to $17.07 hr.  (Ex. 2, Change Personnel Action Form dated 9/22/99).  However, Defendant argues that since Plaintiff was awarded the Vice and Narcotics position under the Defendant's administration on September 25, 1999, and was subsequently transferred from this position to the Bessemer Enforcement Division on November 6, 1999, under Sheriff Jim Woodward's administration, Plaintiff's claims against the Defendant are improper.[12] (Def.'s Mot. for Sum. Judg. 11).

Eleventh Circuit case law proves that Defendant's claim of improper suit is invalid because it is proper to name a current sheriff in a suit for the actions of the previous sheriff.  In *Newman v. Graddick*, 740 F.2d 1513 (11th Cir. 1984), the court held that "successor state officials, upon taking office, [become] parties to [a] suit and...  through automatic substitution... stand in the shoes of their predecessors." *Id*. (citing *Barnett v. Rodgers*, 410 F.2d. 995 (D.C. 1969)).  (*See also Williams v. King*, 420 F.Supp.2d 1224 (N.D.Ala.2006), in which the district court allowed the State of Alabama's previous Attorney General to be substituted

---

[12]     On November 5, 1999, the Alabama Supreme Court rendered a verdict declaring Jim Woodward the Sheriff of Jefferson County, Alabama.  *Eubanks v. Hale*, 752 So. 2d 1113, 1163 (Ala. 1999).

for Troy King, the Attorney General at the time of the action, pursuant to Federal Rule of Civil procedure 25(d)(1)).

In *American Civil Liberties Union of Mississippi, Inc. v. Finch*, 638 F.2d 1336, the Fifth Circuit held that "Federal Rule of Appellate Procedure 43(c)(1), the appellate analog of Federal Rule of Civil Procedure 25(d)(1), provides for automatic substitution of new public officers in litigation after a change in administration only for suits brought against the outgoing officers in their 'official capacity.'"[13] *ACLU of Mississippi*, 638 F.2d at 1341 (5th Cir. 1981).

Thus, although this case was not "pending" at the time the Defendant became Sheriff, it is clear that the Plaintiff could have brought the action against (predecessor) Sheriff Woodward and Defendant Hale would properly have been substituted as soon as he assumed the office of Sheriff.  Thus, this Court finds that the successor state official Defendant Hale may be substituted for his predecessor as a party to a suit, provided that the suit is brought, as this one is, against Defendant in his official capacity.  The Defendant's argument is therefore improper and Plaintiff's claim may be asserted if Plaintiff can present a prima facie case of discrimination.

---

[13]      Appellate Rule 43(c)(1) is only inconsequentially different in wording from Federal Rule of Civil Procedure 25(d)(1). *ACLU v. Finch*, 638 F.2d at 1341, FN 9).
     Further, Plaintiff's claims against the Defendant in his individual capacity have been dismissed.  Therefore, only Plaintiff's claims against Defendant in his official capacity remain in this action. (doc. 23).

The Defendant also claims that Plaintiff cannot raise this claim due to the fact that this claim is time barred.

> A charge under this section shall be filed within one-hundred and eighty (180) days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter...

42 U.S.C § 2000e-(e)(1).

Plaintiff suffered the adverse employment action of being transferred from the Vice and Narcotics Unit to the Bessemer Enforcement Unit on November 6, 1999.  (Ex. 3, Change Personnel Action Form dated 11/11/99).  However, Plaintiff did not file a complaint with the EEOC until June 17, 2003. (Ex. 7, EEOC Discrimination Charge Form).  Due to the strict statutory guidelines, Plaintiff's claims as to this adverse employment action are time barred.

Plaintiff fails to establish a prima facie case for discrimination based on race as to her adverse employment action resulting from her transfer from the Bessemer Vice and Narcotics unit.  Assuming, however, that Plaintiff is able to establish this prima facie case, Plaintiff's claims are time barred.  Further, although Defendant's argument that Plaintiff cannot bring a claim against the Defendant's administration when the adverse employment action occurred under a previous administration is improper, Plaintiff's claims are unsupported by sufficient evidence.  Therefore, Defendant's motion for summary judgment is due to be **GRANTED** as to

Plaintiff's claim of discrimination based on her transfer from the Vice and Narcotics Unit to the Bessemer Enforcement Unit.

### ii. Plaintiff's non-selection for the Youth Aid Investigator position

The Defendant does not assert that this position represented a lateral transfer for Plaintiff.  Thus, the court assumes that Plaintiff has met the second prong of the prima facie case.  Plaintiff also may be able to prove that the position at issue was awarded to a member of a non-protected class.  In Plaintiff's deposition, she claims that the person who was awarded the Youth Aid Investigator position - Shane Bates, a white male - had inferior qualifications than the Plaintiff.

A. (Answers presented by Plaintiff) I had 7 times as much patrol experience, I had some [V]ice and [N]arcotics experience.  Plus we did investigative work in [V]ice and [N]arcotics also.  Shawn Bates[14] had 5 years.  At that time, I had 13 years with the sheriff's department.

Q. (Question presented by Defendant's Counsel) Do you believe that you were better qualified than some of the other applicants who applied for the Youth Investigator Position?

A. The one thing I know for certain is I was better qualified than Deputy Bates."

(Pl.'s Dep. 24, 29).

---

[14]     Shane Bates was awarded the position of the Youth Aid Investigator.  Plaintiff states that she does confuse the names of Shane and Shawn Bates because both are employed with the Sheriff's department. (Pl.'s Dep. 26).

Viewing these facts in the light most favorable to Plaintiff, the third prong of the *McDonnell Douglas* test is satisfied.  Also, Plaintiff's qualification for this position was not challenged by the Defendant.  Therefore, the court assumes that Plaintiff was qualified for this position.  Moreover, Defendant stipulates that "it is possible for Plaintiff to make out a prima facie case for race discrimination in her non-selection..." for the position of Youth Aid Investigator. (Def.'s Mot. for Sum. Judg. 12).

Defendant must now put forth a legitimate, non-discriminatory reason for not selecting Plaintiff. *Reeves*, 530 U.S. at 142.   The Defendant claims that Plaintiff received "highly specialized" training as a School Resource Officer, which precluded Plaintiff, as well as two (2) other School Resource Officers that expressed interest in this position, from final consideration for the position. (Def.'s Mot. for Sum. Judg. 12).  It was stated that "too much time and training had gone into [training] these Deputies to remove them from their... assignment...." (Ex. 6, Letter from Captain Willie Hill).  Therefore, it was determined that Plaintiff and the other School Resource Officers would not be considered for this position. (Ex. 6, Letter from Captain Willie Hill).  Further, the Defendant asserts that Deputy Shane Bates fulfilled the qualifications necessary and was, therefore, awarded the position[15]. (Def.'s Mot. for Sum. Judg. 12).

---

[15]     It was determined that the fifth applicant for the position, Deputy James Miller, had insufficient qualifications to be considered for the position - Captain Willie Hill decided that Deputy James Miller "ha[d] not been [with the sheriff's department] long enough." (Ex. 6, Letter

The court finds that the Defendant has proffered a legitimate, non-discriminatory reason for selecting Deputy Bates rather than Plaintiff, Plaintiff did not present any substantial evidence to show that the Defendant's proffered reason was pretextual. Therefore, the Defendant's motion for summary judgment is due to be **GRANTED** as to Plaintiff's claim of discrimination based on her non-selection for the Youth Aid Investigator position.

### iii. Deputy Position Posted for the Department of Homeland Security

Plaintiff was negatively impacted by the adverse employment action of non-selection for the position posted for the Department of Homeland Security, as this was not a lateral transfer. (Ex. 25, Lindon Aff. ¶ 4). The position was awarded to Deputy Timothy Edgil, a white male. (Pl.'s Dep. 33). Plaintiff's qualification for this position is not at issue and, moreover, the Defendant stipulates that Plaintiff is able to establish a prima facie case regarding her non-selection as a deputy in Homeland Security. (Def.'s Mot. for Sum. Judg. 13). Therefore, the Court finds that Plaintiff has satisfied the requirements of the *McDonnell Douglas* test.

Defendant asserts that, although both Plaintiff and Edgil possessed the same minimum requirements for the position, such as Deputy Sheriff status and at least one year patrol experience with the Jefferson County Sheriff's Office, Edgil also possessed the following qualifications: (1) Edgil possessed previous experience in

from Captain Willie Hill).

Homeland Security; (2) Edgil was once on active duty as a National Guard Officer for one year and assigned to Standing Joint Force Headquarters - Homeland Security[16]; (3) Deputy Edgil maintains a Department of Defense Top Secret Security Clearance as a Guardsman, and a Department of Justice Top Security Clearance through the Birmingham FBI Office. (Ex. 10, Edgil Letter of Interest).

Since Defendant has put forth a legitimate, non-discriminatory reason for the adverse employment action in question and Plaintiff has not provided any evidence to demonstrate that the Defendant's proffered reason is a pretext for discrimination, Defendant's motion for summary judgment is due to be **GRANTED** as to this issue.

### iv. Plaintiff's non-selection for a Sergeant position with the School Resources Division

The denial of a lateral transfer, which is the movement between divisions within a department and does not involve an increase in compensation, is not an adverse employment action. *See Alexander v. Fulton County, Georgia*, 207 F.3d 1303, 1344 (11th Cir. 2000); *Smith v. Alabama Department of Corrections*, 145 F.Supp. 2d. 1291, 1297 (M.D. Ala. 2001)(holding that a failure to transfer may constitute an adverse employment action if the new position entails an increase in pay, prestige, or responsibility).

---

[16]    During this particular tour of duty, Deputy Edgil participated in several seminars, training sessions, real world Homeland Security Missions (the *Columbia* recovery) and performed many Operations Center Watch Officer duties. (Ex. 10, Edgil Letter of Interest).

Defendant holds that Plaintiff's non-selection for a Sergeant position with the School Resource Division does not represent an adverse employment action due to the fact that the position was a lateral transfer resulting in no increase in compensation or rank for the person selected. (Def.'s Mot. for Sum. Judg. 15). However, in Plaintiff's deposition, she mentions that, although this position was in the same department as a position which she previously held, she was "a deputy when [she] was there before and it was now going to be a supervisor[y]" position. (Pl.'s Dep. 36). Viewing these facts in the light most favorable to the Plaintiff, this non-selection deprives the Plaintiff of the prestige of a supervisory position and therefore represents an adverse employment action. The Plaintiff has satisfied the second prong of the prima facie case.

Plaintiff asserts that this position was awarded to Sergeant Dave Thompson, a white male. (Pl.'s Dep. 35). Further, Plaintiff asserts that her non-selection was improper due to the fact that she has more seniority than Sergeant Thompson. (Pl.'s Dep. 36). Moreover, Plaintiff alleges in her deposition that this outcome, her non-selection and the awarding of the position to Sergeant Thompson, was predetermined because the Defendant gave special consideration to Thompson because he was supported by a contributor to Defendant's election campaign. Plaintiff testified to the following in her deposition:

> [A] white male, last name Morris, Johnny Morris, that lives in Corner had put money into Hale's campaign and Hale promised him that he would

promote Dave Thompson and not put him in the jail, because the jail is
viewed as punishment, and it happened just like [I was] told.
(Pl.'s Dep. 30).

Plaintiff has satisfied the third prong of the *McDonnell Douglas* test.  Since

Plaintiff's qualifications for this position were never challenged by the Defendant,

and the facts are viewed in the light most favorable to the Plaintiff, the Court finds

that the Plaintiff has satisfied the requirements of the *McDonnell Douglas* test.

Defendant asserted that Sergeant Thompson was more qualified that

Plaintiff. (Def's. Mot for Sum. Judg. 15).  Although both Plaintiff and Sergeant

Thompson are certified DARE instructors, Thompson was one (1) of five (5)

school resource officers, selected nationally, to receive the Floyd Ledbetter Award,

given to individuals who have made significant contributions to their schools and

communities.  (Ex. 25, Lindon Aff. ¶ 5(b)).  Defendant also asserts that Sergeant

Thompson was more qualified because he initiated and implemented "Club 180",

which is a school resource program focused on the middle school student group.

(Ex. 25, Lindon Aff. ¶ 5(b)).

The Defendant has put forth a legitimate, non-discriminatory reason for

Plaintiff's non-selection for the Sergeant Position in the School Resources

Department and Plaintiff has not produced any evidence to demonstrate that the

Defendant's proffered reason is a pretext for discrimination.  Therefore, the Court

finds that the Defendant's motion for summary judgment is due to be **GRANTED** as to this claim.

### v. Plaintiff's non-selection for the position of Detective in the Birmingham Criminal Division

Plaintiff cannot satisfy the second prong of the prima facie case because her non-selection for the Birmingham Criminal Division resulted in the loss of a <u>lateral</u> transfer position. (Ex. 25, Lindon Aff. ¶ 4).  A lateral transfer position would not result in an increase in rank or compensation for Plaintiff. (Ex. 25, Lindon Aff. ¶ 4).  Therefore, Plaintiff cannot establish a prima facie case for discrimination based on race.  However, Defendant claims that even if Plaintiff was able to establish a prima facie case of discrimination, the decision to award the positions to Sergeants Lyle and Graben was based on seniority.

Assuming that Plaintiff was able to establish a prima facie case, Defendant has presented a legitimate, non-discriminatory reason for the adverse employment actions.

The Defendant states that both Sergeants Lyle and Graber were employed with the Sheriff's Office longer than Plaintiff.  (Ex. 25, Lindon Aff. ¶ 5(c)).  Sergeant Lyle was hired more than thirteen (13) years before Plaintiff and was promoted to Sergeant six years before Plaintiff had the same promotion. (Ex. 25, Lindon Aff. ¶ 5(c)).  Sergeant Graben was hired only nine (9) months before

Plaintiff, but was promoted to Sergeant two (2) years before Plaintiff experienced a similar promotion. (Ex. 25, Lindon Aff. ¶ 5(c)).

Since the Defendant has proffered a legitimate and non-discriminatory reason for his employment decisions, Plaintiff must show pretext. The Plaintiff has not produced any evidence to show that the Defendant's proffered reasons are a pretext for discrimination. Therefore, the Defendant's motion for summary judgment is due to be **GRANTED** as to this issue.

### vi. Plaintiff's non-selection for a Patrol position in the Centerpoint Area.

The requirements for consideration for the patrol position included status as a Sergeant and at least one year patrol experience with the Jefferson County Sheriff's Office. (Ex. 25, Lindon Aff. ¶ 5(d)). The position was open for letters of interest for consideration between June 3, 2004 to June 18, 2004. (Ex. 25, Lindon Aff¶ 5(d)). Since Plaintiff was not classified as a Sergeant until June 30, 2004, she was precluded from being considered for this position because she was not qualified. Since Plaintiff fails the fourth prong of the test, Plaintiff cannot establish a prima facie case of discrimination based on race.

Therefore, Defendant's motion for summary judgment is due to be **GRANTED** as to this issue.

### C.      Plaintiff's Gender Discrimination Claim

The Defendant moves for summary judgment as to Plaintiff's assertion of discriminated based on gender.  Plaintiff did not assert a gender discrimination claim in her complaint.  However, Defendant believes that Plaintiff raised a gender discrimination claim while being deposed.  Defendant specifically focuses on the following exchange that took place during Plaintiff's deposition:

> Q.      (Questions presented by Defendant's Counsel) Okay.  Other than your claim for race discrimination, are you making any other type of claim in this lawsuit?
>
> A.      (Answers presented by Plaintiff) No.
>
> Q.      Okay.  So you are not making a claim of sex discrimination?
>
> A.      I have just been discriminated against, period.  I mean, everything is geared towards white males, so I don't fit that description.
>
> Q.      So are you saying that you are being discriminated based on your sex too, your gender?
>
> A.      Right.

(Ex. 24, Plaint. Dep. 39-40).

Defendant claims that this assertion of a claim is improper because Plaintiff did not raise this claim anywhere in her complaint.  Under Federal Rule of Civil Procedure 8(a)(2), only a short and plain statement of a claim showing that the pleader is entitled to relief is required. *(*Def.'s Mot. for Sum. Judg. 17*;* Fed. R. Civ.

P. 8(a)(2)).  However, the "short and plain statement" must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S.Ct. 1627, 1637 (2005) (citing *Conley v. Gibson*, 355 U.S. 41, 47(1957)).

Plaintiff does not assert in any way in her Complaint an intention to bring a claim of gender discrimination.  Plaintiff mentions gender discrimination in her deposition as well as her EEOC filing. (Pl.'s Dep. 40; Ex. 7, EEOC Discrimination Charge Form).  In her Complaint, Plaintiff frequently asserts that she was discriminated against because of her race.[17]  Plaintiff also asserts that she is being discriminated against because of her involvement in the political process and for her political preferences. (Pl.'s Dep. Ex. 1, Pl.'s Resp. ¶ 8).  Plaintiff also asserted that "white employees are routinely replacing qualified African American employees and are being placed in positions that are not posted, thereby denying black employees the opportunity to apply for the job." (Pl's Dep. Pl.'s Resp. ¶ 8).  Plaintiff consistently claimed race discrimination as well as discrimination based on political affiliation but not gender discrimination in her Complaint.  This lack of notice to Defendant would make any claims of gender discrimination by the Plaintiff improper pursuant to Federal Rule of Civil Procedure 8(a)(2).

---

[17]     Plaintiff contends that she was "discriminated against and treated differently than similarly situated white employees solely because of her race." (Amend. Compl. ¶ 45).  Plaintiff also asserts that she was discriminated against because of her race in denying her the Youth Aid Investigation position. (Amend. Compl. ¶ 46).

Assuming that Plaintiff properly alleged a gender discrimination claim, Plaintiff has not presented direct evidence to establish such a claim. Therefore, Plaintiff must develop her claim through circumstantial evidence by using the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) framework.

In order for the Plaintiff to create a rebuttable presumption of discrimination by proving a prima facie case of discrimination, she must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) similarly situated individuals outside the protected class were treated more favorably; and (4) she was qualified for the job. *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997).

Establishing a prima facie case by the Plaintiff effectively shifts the burden to the Defendant, who must articulate a legitimate, non-discriminatory reason for the challenged employment action. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S 113, 142 (2000).

Defendant acknowledges Plaintiff's six (6) employment actions that are the subject of this summary judgment motion: (i) being transferred from Vice and Narcotics Unit; (ii) non-selection for the Youth Aid Investigator position; (iii) non-selection for the Deputy position in the Department of Homeland Security; (iv) non-selection for the Sergeant position in the School Resource Division; (v) non-selection for the Detective position in the Birmingham Criminal Division as a

Sergeant; and (vi) non-selection for the Patrol position of the Centerpoint Area as a Sergeant.

**(i) Plaintiff's transfer from the Vice and Narcotics Unit**

Plaintiff satisfies the first prong of the test, as she is a female.[18]  Plaintiff was subjected to an adverse employment action in that she suffered a decrease in compensation of approximately five percent (5%) due to this transfer. (Def.'s Mot. for Sum. Judg. 2; Ex. 3, Change Personnel Action Form dated 11/11/99).  There was no evidence presented showing that Plaintiff was replaced by a member of a non-protected class.  Since Plaintiff possessed this position from September 25, 1999, to November 6, 1999 before being transferred, it is assumed that she is qualified for this position, satisfying the fourth prong of the *McDonnell Douglas* test. (Ex. 2, Personnel Change Form dated 9/22/99; Ex. 3, Change Personnel Form dated 11/11/99).  Plaintiff fails to satisfy the third prong of the prima facie case for gender discrimination as to this issue.

Further, due to the fact that Plaintiff filed an EEOC claim alleging discrimination as to this transfer more than one hundred and eighty (180) days after the adverse employment action occurred, the claim is time barred.  The Court finds

---

[18]    For the purposes of evaluating Plaintiff's claims as to the *McDonnell Douglas* prima facie case test, it should be noted that Plaintiff is a female, thereby satisfying the first requirement of belonging to a protected class.  Accordingly, the first prong of this test will be assumed as accepted throughout this opinion.

that the Defendant's motion for summary judgment as to Plaintiff's gender discrimination claims is due to be **GRANTED**.

### ii. Plaintiff's non-selection for the Youth Aid Investigator position

Defendant does not state that the Youth Aid Investigator position represented a lateral transfer for Plaintiff. Therefore, viewing the facts in the light most favorable to the Plaintiff, the Court finds that Plaintiff's non-selection was an adverse employment action. The position was awarded to Deputy Shane Bates, a white male. (Pl.'s Dep. 23). Plaintiff satisfied the minimum requirements in order to be considered for placement into this position.[19] (Pl.'s Dep. 21-22). Since all four (4) prongs of the test have been satisfied, Plaintiff has established a prima facie case for discrimination based on gender.

However, Defendant states that Plaintiff received highly-specialized training for her position in the School Resources Division, the position which Plaintiff held prior to being considered for the position currently at issue, and therefore, should not be moved. (Ex. 6, Letter from Captain Willie Hill). Plaintiff, along with two (2) other School Resource Officers who were being considered for this position, were denied due to their indispensability as officers in the School Resource Division. (Ex. 6, Letter from Captain Willie Hill).

---

[19]   Though Plaintiff was unable to satisfy one of the minimum requirements for consideration of this position , FTO training, due to the fact that this training program was not available when Plaintiff came to patrol, Plaintiff was able to fulfill equivalent training and therefore, satisfied the minimum requirements for the position. (Pl.'s Dep. 21-22).

Although Plaintiff was able to establish a prima facie case for discrimination based on gender, Plaintiff has not provided any evidence to demonstrate that Defendant's proffered legitimate, non-discriminatory reason for his employment action was pretext for gender discrimination.   Therefore the Defendant's motion for summary judgment is due to be granted as to this claim.

### iii. Plaintiff's non-selection for the Deputy position in the Department of Homeland Security

Since Plaintiff's non-selection for the Deputy position in the Department of Homeland Security deprived Plaintiff of a non-lateral transfer, this employment action is adverse.   Thereby, Plaintiff has satisfied the second prong of the test. Plaintiff can also prove that the person to whom the position was awarded was Deputy Edgil, a white male.   (Pl.'s Dep. 29).   Further, Plaintiff's qualifications have never been challenged by the Defendant; therefore, it can be assumed that Plaintiff was qualified for the position.   Viewing the facts in the light most favorable to the Plaintiff, the *McDonnell Douglas* requirements are satisfied and Plaintiff has established a prima facie case for discrimination based on gender.

However, Defendant asserts that Edgil's position as a Standing Joint Force Headquarters National Guard Officer, the training that Edgil received while in this position, as well as Edgil's training in Homeland Security Planning and Emergency Preparedness courses serve as justifications for Defendant's selection of Edgil over the Plaintiff. (Ex. 10, Edgil Letter of Interest).   Further, Defendant

states that Edgil possesses two high-level security clearances through both the Department of Defense and the Department of Justice. (Ex. 10, Edgil Letter of Interest).

Although Plaintiff was able to establish a prima facie case for discrimination based on gender, Plaintiff has not provided any evidence to demonstrate that the Defendant's proffered legitimate, non-discriminatory reason for his employment action was pretext for gender discrimination. Accordingly, this Court finds that the Defendant's motion for summary judgment is due to be **GRANTED** as to this issue.

### iv. Plaintiff's non-selection for the Sergeant position in the School Resource Division

Due to the fact that this position represented a lateral transfer for the Plaintiff, the second prong of the test is not satisfied. (Ex. 25, Lindon Aff. ¶ 5(b)). The position for which Plaintiff was not selected was awarded to Sergeant Dave Thompson, a white male. Plaintiff can be assumed to have satisfied the final prong of the test due to the fact that her qualifications were never questioned. Since Plaintiff has failed to show an adverse employment action, Plaintiff has not established a prima facie case for discrimination based on gender as to this claim.

Assuming, however, that Plaintiff had established such a claim, Defendant states that Sergeant Thompson's achievements and contributions made to the schools and communities in which he worked, both locally and nationally, made

Thompson a more qualified candidate for the position.

Although Plaintiff was able to establish a prima facie case for discrimination based on gender, Plaintiff has not provided any evidence to demonstrate that the Defendant's proffered legitimate, non-discriminatory reason for his employment action was pretext for gender discrimination.  Accordingly, this Court finds that the Defendant's motion for summary judgment is due to be **GRANTED** as to this claim.

### v. Plaintiff's non-selection for the Detective position in the Birmingham Criminal Division

Similar to Plaintiff's non-selection for the Sergeant position in the School Resource Division, Plaintiff fails the second prong of the test due to the fact that this detective position in question represented a lateral transfer.  Plaintiff can prove the third prong of the test in that the two officers selected for the position in question are Sergeants Lyle and Graben, both white males.  Although Plaintiff's qualifications for this position are not in question and Plaintiff can prove that this position was awarded to members of a non-protected class - Sergeants Lyle and Graben, both white males - Plaintiff fails to establish a prima facie case for discrimination based on gender due to the fact that this position represented a lateral transfer.

Further, the undisputed evidence is that both Sergeants Lyle and Graben possessed more seniority than Plaintiff.   Sergeant Lyle was hired more than

thirteen (13) years before Plaintiff, and was promoted to sergeant six (6) years prior to Plaintiff's promotion. (Ex. 25, Lindon Aff. ¶ 5(c)).  Sergeant Graben was hired nine (9) months prior to Plaintiff being hired, but was promoted to Sergeant two (2) years prior to Plaintiff receiving her promotion. (Ex. 25, Lindon Aff. ¶ 5(c)).

Plaintiff cannot establish a prima facie case of discrimination based on gender.  Further, the Plaintiff has not provided any evidence to demonstrate that the Defendant's legitimate, non-discriminatory reasons for the adverse employment actions are mere pretext for discrimination.  Hence, Plaintiff has not put forth sufficient evidence to sustain this claim.  The Court finds that the Defendant's motion for summary judgment is due to be **GRANTED** as to this claim.

### vi. Plaintiff's non-selection for the Sergeant Patrol Position of the Centerpoint Area

No evidence was put forth by Defendant or Plaintiff that this position represented a lateral transfer.  Viewing this lack of evidence in the light most favorable to the Plaintiff, Plaintiff is able to establish that her non-selection represents an adverse employment action.  Further, Plaintiff states, in her deposition, that the officer awarded this position was Sergeant Lampman, a white male. (Pl.'s Dep. 39).  The Centerpoint Patrol position was posted as vacant on June 4, 2004 and the deadline for expressing interest for this position was June 18,

2004. (Ex. 25, Lindon Aff. ¶ 5(d)).   The requirements for consideration for the Patrol position included holding the status of a Sergeant and at least one year patrol experience with the Jefferson County Sheriff's Office. (Ex. 25, Lindon Aff. 5(d)). Since Plaintiff was not classified as a Sergeant until her promotion on June 30, 2004, she cannot satisfy the final prong of the test. (Ex. 25, Lindon Aff. ¶ 5(d)). Plaintiff fails to prove her qualification for this position and, therefore, she cannot establish a prima facie case of discrimination based on gender.   The Court finds that the Defendant's motion for summary judgment is due to be granted as to Plaintiff's claim of gender discrimination based on her non-selection for the Sergeant Patrol position.

### V. Conclusion

Although Eleventh Amendment Immunity does not preclude Plaintiff from seeking monetary relief claims under Title VII, for the reasons set forth above, the Defendant's motion for summary judgment is due to be **GRANTED** as to all of Plaintiff's Title VII claims.

**DONE** and **ORDERED** this 7th day of July, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge